Opinion issued November 19, 2009














     

In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00426-CV




CITY OF HOUSTON, Appellant,

v.

BRUCE A. NORCINI, Appellee




On Appeal from County Civil Court At Law No. 3
Harris County, Texas
Trial Court Cause No. 900672




O P I N I O N 
          In 2006, the City of Houston (“the City”) amended its flood-control ordinances.
Under the amendment, new residential construction was severely restricted on
property located in a floodway. Appellee, Bruce A. Norcini, sued the City alleging
that the 2006 amendment constituted an unconstitutional taking of his property,
which was in a floodway. Norcini claimed that the amendment effectively deprived
him use of his property and “drastically reduced” its value.
          The City filed a plea to the jurisdiction, asserting that the trial court lacked
subject-matter jurisdiction because Norcini’s claims were not ripe for adjudication.
The trial court denied the City’s plea. The City appeals, raising one issue. 
          We affirm. 
Background
          In 2003, Norcini was a principal owner of a company that purchased four lots
in Shady Acres, a Houston subdivision. The company subdivided the lots into eight
residential lots, creating the Savannah Manor subdivision. After obtaining building
permits from the City, Norcini’s company built and sold residences on three of the
lots. In early 2006, Norcini acquired from his company two of the remaining vacant
lots (“the Property”), which he intended to sell “to a builder.” 
          When Norcini acquired it, the Property was not in a floodway. In June 2006,
the City adopted new maps prepared by FEMA showing the location of floodways in
Houston. The FEMA maps placed Norcini’s newly acquired property in a floodway. 
          Also in 2006, the City amended its Code of Ordinances (“Code”) to further
restrict development within a floodway, as determined by the FEMA maps. In
particular, amended Code section 19.43(a)(2) prohibited the issuance of a permit for
“development to be located in any floodway . . . if that development provides for . . .
[n]ew construction, additions to existing structures, or substantial improvement of any
structure within the floodway . . . .” Houston, Tex. Code of Ordinances § 19-43(a)(2) (2006) (since amended). 
          The ordinance provided an exception for the City Engineer to issue a permit
“[f]or those facilities necessary to protect the health, safety and welfare of the general
public” or “for the construction of a bridge or the repair or replacement of an existing
bridge in a floodway[.]” Houston, Tex. Code of Ordinances § 19-43(b),(c) (2006)
(since amended). Relatedly, Code section 19-20 required that “[v]ariances shall not
be granted for development within any floodway if the development cannot meet the
requirements of 19-43(b) of this Code”; that is, development “necessary to protect the
health, safety and welfare of the general public.” Houston, Tex. Code of
Ordinances § 19-20 (Ord. No. 2006-894) (2006) (since amended); see Houston,
Tex. Code of Ordinances § 19-43(b) (2006) (since amended). 
          On August 9, 2007, Norcini sued the City alleging that, prior to the 2006
amendment, section 19-43 allowed the City Engineer to issue permits for new
construction within a floodway, notwithstanding a restriction on issuing such permits. 
Norcini alleged that the 2006 amendment prohibited the issuance of building permits
for, inter alia, new construction and took away the City Engineer’s discretion to issue
such permits. 
          Norcini asserted that the City’s 2006 amendment of section 19-43 constituted
an unconstitutional taking of his property under the federal and state constitutions.
Specifically, Norcini alleged in his petition,
The intentional act of the City of Houston in the enactment of the
amendment to Section 19-43 of [the Code] and its refusal to issue
building permits as referred to [in the foregoing parts of the original
petition] has unlawfully deprived [Norcini] of the use, benefit and
enjoyment of his Property and has drastically reduced its value because
[Norcini] can neither construct any improvement in or upon the Property
nor sell the Property to anyone who desires to construct any
improvements in or upon the Property. 
          Norcini also alleged that he “is not required to exhaust administrative remedies
prior to the institution of this lawsuit because no administrative procedures have been
established” by the City “for the issuance of building permits on properties situated
in the Floodways . . . .” Norcini claims that “[t]he amendment to Section 19-43, as
stated above, simply denies to Plaintiff the ability to secure a building permit without
any right to be heard by any administrative agency or body.” 
          The City answered and filed a plea to the jurisdiction alleging that the trial
court lacked subject-matter jurisdiction because Norcini’s claim was not ripe. In its
trial court briefing, the City contended, “The claim that Houston’s ordinance effects
a regulatory taking as applied to [Norcini’s] property is unripe because [Norcini] did
not apply for a permit or seek an exception.” The City continued, “[Norcini’s]
allegation depends on the extent, if any, to which he may be deprived of the economic
use of this particular piece of property. . . . [F]or a regulatory takings claim to be ripe
there must be a final decision regarding the application of the regulations to the
property at issue.” In support of its plea, the City offered the affidavit of the City
Engineer, who testified that Norcini had not applied for a permit. 
          In his response, Norcini acknowledged that he had not applied to the City for
a building permit before filing suit.


 Norcini asserted that the 2006 ordinance
interfered with “his investment-backed expectations” to either “build a structure on
the property” or “sell it to someone who desires to do so.” Norcini pointed out that
the two permitting exceptions found in the 2006 ordinance did not apply to his
intended use of the property and that no other exceptions or variances were provided
in the Code. Norcini summarized, “[T]his case is ripe for litigation because any
application for a permit, application for a variance or appeal from the denial of either
would be a futile exercise that would only waste the time and the resources of both
[Norcini] and [the City].” 
          Norcini supported his response with his own affidavit.
          The trial court denied the City’s plea to the jurisdiction. The City filed this
interlocutory appeal, seeking reversal of the trial court’s denial of its jurisdictional
challenge.
Standard and Scope of Review
          A plea to the jurisdiction seeks dismissal of a cause based on lack of
subject-matter jurisdiction. Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex.
2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has
affirmatively demonstrated subject-matter jurisdiction are questions of law that we
review de novo. Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226
(Tex. 2004). In deciding a plea to the jurisdiction, we may not weigh the merits of
the plaintiff’s claim, but must consider only the plaintiff’s pleadings, construed in
favor of the plaintiff, and the evidence pertinent to the jurisdictional inquiry. County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). We must take as true all
evidence favorable to the a plaintiff and “indulge every reasonable inference and
resolve any doubts in [his] favor.” Miranda, 133 S.W.3d at 228.
 
 
Analysis: Ripeness of Norcini’s Takings Claims
A.      Relevant Legal Principles
          The Texas Constitution provides that “[n]o person’s property shall be taken,
damaged or destroyed for or applied to public use without adequate compensation
being made, unless by the consent of such person.” Tex. Const. art. I, § 17.
Similarly, the Fifth Amendment’s Just Compensation Clause provides that “private
property [shall not] be taken for public use without just compensation.” U.S. Const.
amend. V. The Just Compensation Clause applies to the states by operation of the
Fourteenth Amendment. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex.
1998).
          Takings are classified as either physical or regulatory. Id. A physical taking
is an unwarranted physical appropriation or invasion of the property. See id. A
compensable regulatory taking can occur when a governmental agency imposes
restrictions that either deny a property owner all economically viable use of his
property or unreasonably interferes with the owner’s right to use and enjoy the
property.


 Id. at 935; Taub v. City of Deer Park, 882 S.W.2d 824, 826 (Tex. 1994). 
          “Inverse condemnation occurs when (1) a property owner seeks (2)
compensation for (3) property taken for public use (4) without process or a proper
condemnation proceeding.” Villarreal v. Harris County, 226 S.W.3d 537, 541 (Tex.
App.—Houston [1st Dist.] 2006, no pet.); see City of Abilene v. Burk Royalty Co.,
470 S.W.2d 643, 646 (Tex. 1971). To state a cause of action for inverse
condemnation under the Texas constitution, a plaintiff must allege (1) an intentional
governmental act, (2) that resulted in his property being taken, damaged, or
destroyed, (3) for public use. Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39
S.W.3d 591, 598 (Tex. 2001). 
          The City asserts that the trial court does not have subject-matter jurisdiction
because Norcini’s takings claims are not ripe for adjudication. Ripeness is a
threshold issue that implicates subject-matter jurisdiction. Patterson v. Planned
Parenthood, 971 S.W.2d 439, 442 (Tex. 1998). While the jurisdictional issue of
standing focuses on who may bring an action, ripeness focuses on when that action
may be brought. Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000).
          Ripeness concerns whether, at the time a lawsuit is brought, the facts have
developed sufficiently such that an injury has occurred or is likely to occur, rather
than being contingent or remote. Patterson, 971 S.W.2d at 442. To establish that a
claim is ripe based on an injury that is likely to occur, the plaintiff must demonstrate
that the injury is imminent, direct, and immediate, and not merely remote, conjectural,
or hypothetical. Gibson, 22 S.W.3d at 852. By focusing on the concreteness of
injury, the ripeness doctrine allows a court to avoid premature adjudication and
issuance of advisory opinions. Id.
B.      Concrete Injury
          On appeal, the City contends that Norcini has not alleged that he suffered a
“concrete injury.” 
          In his petition, Norcini alleged that he had been deprived of the “use, benefit
and enjoyment of his property” because he “can neither construct any improvement
in or upon the Property nor sell the Property to anyone who desires to construct any
improvements in or upon the property.” 
          Norcini supported his response to the City’s jurisdictional challenge with his
own affidavit testimony. In the affidavit, Norcini testified that, in 2003, he owned
fifty percent of a company that purchased four residential building lots in Shady
Acres, a Houston subdivision. Norcini’s company subdivided these lots into eight
residential building lots. After subdividing the lots, Norcini’s company then “secured
building permits from the City of Houston and built and sold three residences on three
of the lots.” In early 2006, Norcini “personally acquired” two of the remaining lots
from his company. Norcini testified that he “intend[ed] to sell [the lots] to a builder.” 
          Norcini further averred that he had “made inquiries of the City of Houston as
to whether it would issue building permits for the two lots referred to above . . . .” 
Norcini continued that he was “told that the City of Houston would issue no permits
for the construction of any structure of any kind or nature on those lots, stating, as its
reason, Chapter 19 of its Code of Ordinances.” Norcini testified that
“[r]epresentatives of the City of Houston have repeatedly told me that I can secure no
permits to construct any improvement on the property . . . .” Norcini also testified
that he had placed for sale signs on the Property but “no one has expressed an interest
in purchasing those lots and I can use them for no other purpose.” 
          Relying on Waco Independent School District v. Gibson, the City alleges, 
In the absence of any concrete plan for development or renovation on
the Property, or even any application that would allow the City, in the
first instance, to determine that the Property lies within a floodway to
which the Ordinance applies, there is at best an abstract, hypothetical
and remote dispute, which the ripeness doctrine precludes from being
litigated.
See 22 S.W.3d at 852 (“A case is not ripe when determining whether the plaintiff has
a concrete injury depends on contingent or hypothetical facts, or upon events that
have not yet come to pass.”). The City further contends, “Because Norcini still owns
his property, and has not alleged that he had a specific plan or even a time line for
developing or selling the Property when the 2006 Amendment was enacted, Norcini
failed to ripen his claim.”


 
          The record does not support the City’s contention. We are mindful that, in
addition to viewing Norcini’s allegations in his favor, we must take as true all
evidence favorable to Norcini and “indulge every reasonable inference and resolve
any doubts in the [his] favor.” See Miranda, 133 S.W.3d at 228. Viewing the record
through this prism, Norcini has alleged a “concrete injury.” 
          Norcini alleged that his property was in a Houston floodway. He also alleged
that the 2006 amendments deprived him of the “use, benefit, and enjoyment” of the
Property because he could not sell it to anyone who desired “to construct any
improvements in or upon the property.” Norcini testified in his affidavit that he
intended to sell the Property to a builder, indicating that, contrary to the City’s
contention, Norcini had a definitive plan for the Property, which Norcini alleged was
effectively destroyed by the enactment of the 2006 amendment.



          The definitive, as opposed to hypothetical or contingent, nature of Norcini’s
plan for the Property can also be reasonably inferred from Norcini’s testimony
regarding his historical involvement with developing the Property. Norcini testified
that his company purchased and subdivided four lots into eight lots, creating a new
subdivision, which included the two lots at issue. Norcini testified that his company
built and sold residences on three of these newly created lots. Norcini personally
acquired two of the remaining vacant lots in the subdivision from his company. The
acquisition occurred only a few months before the City enacted the 2006
amendments, which effectively prohibited the construction of residential
improvements on the Property. 
          Norcini also provided affidavit testimony that he had inquired with the City
whether building permits would be issued for the Property, and was informed no
permits would be issued. Norcini’s testimony further indicated that he had taken
affirmative steps to sell the Property. 
          Considering Norcini’s allegations and jurisdictional evidence as we must, we
conclude that Norcini has alleged a “concrete injury.”


 
C.      Futility Exception
          The City also contends that Norcini’s claim is not ripe because he did not apply
for a building permit, seek a variance, or request any other type of regulatory relief
from the ordinance’s restrictions. The City relies on the legal principle that a
regulatory takings claim is not ripe until there is a final decision by the regulatory
agency regarding the application of the regulations to the property at issue. Citing
Mayhew, the City contends that a determination whether Norcini’s property has been
taken or impaired cannot be made until the City has denied Norcini’s application for
a permit or a variance. See Mayhew, 964 S.W.2d at 929–30.
          Norcini responds that applying for a permit or seeking a variance would have
been futile because, under the subject Code provisions, the City or its agencies had
no discretion to issue a building permit or variance for the Property. Norcini correctly
points out that this Court has held that the futility exception applies to the 2006 flood-control provisions at issue here. See City of Houston v. Noonan, No. 01-08-01030-CV, 2009 WL 1424608, at *5 (Tex. App.—Houston [1st Dist.] May 21, 2009, no pet.)
(mem. op.); City of Houston v. O’Fiel, No. 01-08-00242-CV, 2009 WL 214350, at *5
(Tex. App—Houston [1st Dist.] Jan. 29, 2009, pet. filed) (mem. op.). 
          As in this case, the plaintiffs in Noonan and O’Fiel alleged that the 2006 flood-control provisions prohibited them from constructing a residential improvement on
property located in a Houston floodway. Noonan, 2009 WL 1424608, at *1–2;
O’Fiel, 2009 WL 214350, at *1–2. We held that the plaintiffs’ claims were ripe even
though they had not sought or obtained a final decision regarding whether a permit
or variance would be issued for the construction of residential improvements on the
subject property. See Noonan, 2009 WL 1424608, at *5; O’Fiel, 2009 WL 214350,
at *5–6. We recognized that, because no City agency had discretion to issue a permit
or a variance under the 2006 flood-control provisions, it would be futile for a
landowner to apply for a building permit or to seek a variance to construct a
residential improvement on property located within a Houston floodway. See
Noonan, 2009 WL 1424608, at *5; O’Fiel, 2009 WL 214350, at *5. 
          Our holdings in O’Fiel and Noonan control here. There are no meaningful
distinctions between the claims alleged here and those alleged in Noonan and O’Fiel. 
Thus, for the reasons stated in Noonan and O’Fiel, we conclude that Norcini’s takings
claims are ripe even though he did not formally apply for a building permit or seek
a variance regarding the subject property. See Noonan, 2009 WL 1424608, at *5;
O’Fiel, 2009 WL 214350, at *5. 
D.      2008 Amendment
          Lastly, the City contends that Norcini’s claims are “incapable of ripening”
because the City Council amended Code section 19-43 in 2008. The 2008
amendment provides the City Engineer with some discretion to issue building permits
for development of vacant land within floodways, if certain criteria are satisfied. See
Houston, Tex. Code of Ordinances Houston, Tex ., Ordinance 2008-658 (July
23, 2008) (codified at Houston, Tex. Code of Ordinances § 19-43 (2009)).
          The City made this same argument in Noonan. See 2009 WL 1424608, at *6. 
We explained that, because Noonan’s claims under the 2006 amendment were ripe
when he filed his suit, the 2008 amendment was irrelevant. See id. Similarly,
Norcini’s claims under the 2006 amendment were ripe when he filed suit in August
2007. Thus, the 2008 amendment is “irrelevant” to the ripening of Norcini’s claims
arising from the 2006 amendment.


 See id.
Conclusion 
          After viewing his allegations favorably, accepting his evidence as true,
indulging every reasonable inference from his evidence, and resolving any doubts in
his favor, we conclude that Norcini has alleged a concrete injury. See Miranda, 133
S.W.3d at 228. In addition, we conclude that Norcini was not required to apply for
a building permit or to seek a variance for his claims to ripen. Given the provisions
of the 2006 amendment, seeking a permit or variance would have been futile. See
Noonan, 2009 WL 1424608, at *5; O’Fiel, 2009 WL 214350, at *5. Finally, the 2008
amendment has no relevance to whether Norcini’s claims under the 2006 amendment
are ripe. See Noonan, 2009 WL 1424608, at *6. We conclude that Norcini’s claims
were ripe when he filed suit. See id. We hold that the trial court properly denied the
City’s jurisdictional challenge. 
          We overrule the City’s sole issue. We affirm the trial court’s order denying the
City’s plea to the jurisdiction. 
 
 
                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Higley, and Sharp.